## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHAEL FLINT,                               :

     Plaintiff,                           :
                                         Case No. 3:12cv00155

 vs.                                        :

                                    District Judge Thomas M. Rose

CAROLYN W. COLVIN,                           :     Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                     :

     Defendant.                           :

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.    Introduction

Plaintiff Michael Flint brings this case challenging the Social Security Administration's denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Plaintiff filed his SSI and DIB applications on September 21, 2007, asserting that he has been under a "disability" since January 1, 1999.  (*PageID##* 175-78, 179-87).  Plaintiff claims to be disabled due to dysthymic disorder; generalized anxiety disorder; shortness of breath; generalized weakness; fatigue; muscle and joint pain; and an inability to concentrate.  (*See PageID#* 206).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

After various administrative proceedings, Administrative Law Judge (ALJ) Amelia G. Lombardo denied Plaintiff's applications based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act.  (*PageID##* 68-82).  The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration.  This Court has jurisdiction to review the administrative denial of her applications.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. # 13), the administrative record (Doc. # 8), and the record as a whole.

## II.  <u>Background</u>

### A.  <u>Plaintiff's Vocational Profile and Testimony</u>

Plaintiff was 47 years old on his alleged disability onset date, which defined him as a "younger individual" for purposes of resolving his DIB and SSI claims.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c)[2]; (*PageID##* 80, 201).  Plaintiff has a master's degree in health care management and finance.  *See* 20 C.F.R. § 404.1564(b)(4); (*PageID##* 96-97, 211).  He has past relevant employment as a disc jockey and registered nurse.  (*PageID##* 207, 237).

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

Plaintiff testified that he lives alone in a house owned by his aunt. (*PageID#* 95). He last worked in 1996 or 1997. (*PageID#* 96). He spends most of the day resting and doing light chores. He goes grocery shopping at night, about once a week. (*PageID#* 100). He suffers from anxiety attacks, and noted the symptoms include nervousness, jitteriness, pacing, and an inability to concentrate on any one task. Plaintiff stated, "I'll try to start something like laundry, and then -- and then just get overwhelmed then and just have to go sit down, and put some music on, and try to calm myself." (*PageID#* 101). He looks up news on his computer, but seldom emails his family due to the age of the computer. (*PageID#* 103). He had problems concentrating on television shows. He goes to the library to get books, DVDs, and CDs. He did manage to finish a book in the "last couple months." (*PageID#* 104). He leaves his house about once or twice per week to go to the store or a doctor's appointment. (*PageID#* 105). He sees his therapist at South Community every twelve weeks. (*Id.*). He does not believe he can work because he suffers from anxiety when he leaves the house. (*PageID#* 106).

## B.    <u>Medical Opinions</u>

Plaintiff's mental health treatment history includes being seen at Eastway Behavioral Healthcare from September 10, 2002 through February 21, 2005 (*PageID##* 281-306). During treatment there he reported that he was unable to obtain a job because of his anxiety and depression. The intake social worker found his intelligence level was above average, and his judgment and insight were good. (*PageID##* 305-06). He was prescribed Paxil by psychiatrist, Dr. Luis Justiniano-Toro. (*PageID#* 300).

3

1.    **South Community Behavioral Health /Susan Songer, M.D.**

Plaintiff treated at South Community Mental Health in 1998, and again in 2000 (until early 2002). (*PageID##* 305-06, 563-700).  He was diagnosed with major depression, single episode and moderate, and assigned a GAF of 51[3].  (*PageID#* 306).

Plaintiff returned to South Community on July 19, 2007.  The intake social worker diagnosed a dysthymic disorder.  (*PageID##* 315-25).

Plaintiff underwent a psychiatric evaluation with Dr. Songer on September 11, 2007.  Plaintiff reported physical impairments of generalized pain in his muscles and joints; headaches; shortness of breath; and chest pains.  (*PageID#* 353).  Dr. Songer found Plaintiff to be depressed with a constricted affect.  He had some impairment in his attention and concentration.  His judgment and insight were fair.  Dr. Songer diagnosed a dysthymic disorder, and a generalized anxiety disorder, and assigned Plaintiff a GAF score of 45-50.  (*PageID#* 354).  She restarted Plaintiff on Paxil and Wellbutrin.  (*PageID#* 355).

Dr. Songer completed a Mental Residual Functional Capacity form that same day. She opined that Plaintiff was moderately limited in his ability to do the following: understand, remember, and carry out detailed instructions; maintain attention and

---

[3]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.  *See Martin v. Comm'r of Soc. Sec.*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 45-50 indicates "severe symptoms ... or  serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...."  (*Id.*).

concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work related decisions; complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (*PageID#* 508). Dr. Songer concluded that Plaintiff was unemployable for nine to eleven months. (*PageID#* 509).

On November 7, 2007, Plaintiff reported that his medications were helping and that he was feeling "less depressed." Dr. Songer noted only mild anxiety and a broader-ranged affect. (*PageID##* 348-49). On January 24, 2008, Plaintiff reported that he was doing "ok" and that taking Paxil and Wellbutrin were helping. Dr. Songer noted no mental status abnormalities at that time. (*PageID#* 345). In March and June 2008, Dr. Songer noted that Plaintiff was depressed but "overall stable" on current medications. (*PageID##* 367, 456).

In May 2008, he was depressed and mildly anxious.  He was having problems making himself do things.  (*PageID#* 458).  In September 2008, Plaintiff reported an increase in his depression but he did not want to increase his Paxil dosage.  (*PageID#* 455).  Plaintiff agreed to an increase in his Paxil in November 2008.  (*PageID#* 518).  He was observed to be anxious and depressed.  (*PageID#* 517).  In January 2009, he agreed to try the medication, Klonopin.  (*PageID#* 515).  He was observed to have some anxiety. (*PageID#* 514).  In March 2009, Dr. Songer found Plaintiff was "overall stable." (*PageID#* 512).  Plaintiff reported an increase in depression and anxiety in July 2009, but he declined Dr. Songer's recommendation to start mental health therapy.  (*PageID#* 556).

On July 15, 2009, Dr. Songer completed a Basic Medical form, in which she listed Plaintiff's mental conditions as a dysthymic disorder and generalized anxiety disorder. Plaintiff's prognosis was fair with continued treatment.  She made the following note regarding  Plaintiff's conditions: "depressed, anxious, excessive worry, avoidance of people, procrastination, [decreased] motivation, forgetful recently, some hopelessness." (*PageID#* 526).  Dr. Songer concluded that Plaintiff was unemployable for twelve months or more.  (*PageID#* 527).

Dr. Songer also completed a Mental Residual Functional Capacity form that same day and noted that Plaintiff was moderately limited in his ability to do the following: understand, remember, and carry out detailed job instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine

6

without special supervision; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation.  He was moderately to markedly impaired in his ability to work in coordination with or proximity to others without being distracted by them and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  He was markedly impaired in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; and to interact appropriately with the general public.  (*PageID#* 528).  Dr. Songer concluded, "[h]e has not been able to work due to his problems with his depression/anxiety & has been fairly isolated to his home."  She opined that he was unemployable for twelve months or more.  (*PageID#* 529).

Between September 2009 and December 2009, Plaintiff reported his symptoms had improved and that he felt his medications were generally helping.  Dr. Songer noted a normal mood and a full-ranged affect, as well as an otherwise normal mental status examination.  (*PageID##* 547-50, 552-55).  In April 2010, Dr. Songer stated that Plaintiff was "continuing" with only "mild" symptoms of depression and anxiety.  She stated that Plaintiff's medications had been managing his symptoms.  She noted a normal mental

status examination with a normal mood; full-ranged affect; logical and linear thought processes; and no evidence of suicidal or homicidal ideation.  (*PageID##* 544-45).

2.      **Damian Danopulos, M.D.**

On March 19, 2008, Dr. Danopulos consultatively examined Plaintiff at the request of the Ohio Bureau of Disability Determination (BDD).  (*PageID##* 388-402).  Plaintiff complained of effort-related shortness of breath; bilateral knee and hip pain; low back pain; and depression.  (*PageID#* 388).  As for hip pain, Plaintiff told Dr. Danopulos that Ibuprofen eased his pain "within one hour" and that he was then "okay."  (*PageID#* 389).  On examination, Plaintiff dressed and undressed normally, and Dr. Danopulos reported that his remaining movements were normal.  Dr. Danopulos found a full range of motion of the upper and lower extremities (including painful but normal range of motion of the hips, and painless and normal range of motion of the knees).  He noted no evidence of joint abnormalities or tropic changes in the lower extremities.  Dr. Danopulos also stated that a musculoskeletal examination showed a normal gait without ambulatory aids; no pain upon pressure in the spine; restricted but painless range of motion of the lumbar spine; a normal toes and heel gait; and normal straight leg raising.  According to Dr. Danopulos, Plaintiff was able to squat and arise from squatting normally, and there was no evidence of nerve root compression or peripheral neuropathy.  He also noted a normal neurological examination.  (*PageID##* 389-93).  Pulmonary function studies showed mild obstructive lung disease.  (*PageID##* 392, 400).  Dr. Danopulos listed his objective findings as early emphysema; bilateral knee, hip, and lumbar spine arthralgias; and circumstantial

8

depression.  (*PageID#* 393).  Dr. Danopulos concluded that Plaintiff's ability to work was affected by his early emphysema and arthralgias.  (*PageID#* 394).

    **3.**    **Todd Finnerty, Psy.D./Karen Steiger, Ph.D.**

After review of Plaintiff's medical record on May 14, 2008, Dr. Finnerty assessed his mental condition.  (*PageID##* 403-20).  Dr. Finnerty found Plaintiff had moderate restrictions in the following areas: activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace.  He found no episodes of decompensation.  (*PageID#* 417).  He further determined that the evidence did not establish the presence of the "C" criteria.  (*PageID#* 418).

Dr. Finnerty determined that Plaintiff would be moderately limited in his ability to do the following: to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting.  (*PageID#* 404).

 Dr. Finnerty opined that Plaintiff "would be best-suited mentally in positions situated in lower-stress environments that do not entail following strict deadlines and only require minimal social interaction."  (*PageID#* 405).  On October 16, 2008, Karen Steiger, Ph.D., reviewed the file and affirmed Dr. Finnerty's assessment.  (*PageID#* 503).

    **4.**    **Charles Derrow, M.D./Maria Congbalay, M.D.**

9

Dr. Derrow reviewed the file on May 20, 2008. (*PageID##* 421-28). Dr. Derrow concluded that Plaintiff could lift, carry, push, and pull 50 pounds occasionally, and 25 pounds frequently; stand and/or walk for about six hours in an eight hour workday; and sit for about six hours in an eight hour workday. (*PageID#* 421). Plaintiff was also able to avoid all exposure to fumes, odors, dusts, gases, poor ventilation, etc. (*PageID#* 425). Dr. Derrow also noted that Plaintiff's symptoms of shortness of breath and weakness are attributable to his early emphysema and arthralgias: "[t]he severity and duration of his symptoms is proportional to that expected. The severity of the symptoms and its alleged effect on function is consistent with all evidence in file." (*PageID#* 426). On November 4, 2008, Maria Congbalay, M.D., reviewed the file and affirmed Dr. Derrow's assessment. (*PageID#* 504).

### 5.   J. Broering, M.D.

At Plaintiff's initial visit on October 10, 2005, Dr. Broering completed a Basic Medical form for the local county Department of Job and Family Services. Dr. Broering described Plaintiff's medical conditions as depression, fatigue, and chest pain. Dr. Broering observed that Plaintiff had a flat affect, was anxious, and depressed. Dr. Broering opined that Plaintiff could frequently lift/carry up to ten pounds, and occasionally lift/carry up to twenty pounds. Dr. Broering concluded that Plaintiff was unemployable for between thirty days and nine months because of his psychiatric impairments. (*PageID##* 505-06).

### III.   Administrative Review

10

### A.    **"Disability" Defined**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.    **ALJ Lombardo's Decision**

ALJ Lombardo resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations.  *See PageID##* 69-70; *see also* 20 C.F.R. § 404.1520(a)(4).  Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff had the following severe impairments: a dysthymic disorder; an anxiety disorder, not otherwise specified; and early emphysema.  (*PageID#* 70).

11

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments.  (*PageID#* 71).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to a clean air environment; he can perform only simple, routine, tasks; and his work must be low stress in nature, defined as no assembly line production quotas, no fast paces, and only minimal contact with the general public, coworkers, and supervisors.  (*PageID#* 72-73).

At Step 5, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy.  (*PageID##* 80-81).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI.  (*PageID#* 81).

## IV. <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains

12

evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.**     **Discussion**

　　　　**A.**     **The Parties' Contentions**

Plaintiff assigns two errors in this case.  First, Plaintiff contends that the ALJ erred in her evaluation of treating psychiatrist, Dr. Songer's opinions.  (Doc. #13 at *PageID#*

13

710).  According to Plaintiff, the ALJ erred in relying on the opinions of the
non-examining State agency reviewers over the opinion of Dr. Songer, and by substituting
her own opinion for the opinion of Dr. Songer, as well as the opinions of the
non-examining reviewers.  Plaintiff argues the ALJ rejected these physicians' opinions
that he had at least a moderate restriction in his daily activities and then presumed that the
evidence submitted after their reviews would not have changed their opinions.  (*Id.* at
*PageID#* 717).  Second, Plaintiff argues the ALJ erred in finding that he was capable of
performing work activity at all exertional levels.  (*Id.* at *PageID#* 717).

Conversely, the Commissioner contends the ALJ's decision denying benefits to
Plaintiff is supported by substantial evidence.  Specifically, the Commissioner asserts that
the ALJ reasonably discounted Dr. Songer's opinions, and reasonably found that Plaintiff
could perform a restricted range of unskilled work at all levels of exertion.  Accordingly,
the Commissioner asserts the ALJ's decision should be affirmed.  (Doc.# 12).

### B.    The Opinion of the Treating Physician

The Sixth Circuit has held that claimants are "entitled to receive good reasons for
the weight accorded their treating sources independent of their substantive right to receive
disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007);
*see Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*,
378 F.3d 541, 544 (6th Cir. 2004).  "[T]he procedural requirement exists, in part, for
claimants to understand why the administrative bureaucracy deems them not disabled

when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997)). However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582 F.3d at 406 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). In *Wilson*, the Sixth Circuit noted that a treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques; (2) it is inconsistent with substantial evidence in the record; (3) it does not identify the evidence supporting its finding; and (4) it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record. *Wilson*, 378 F.3d at 546.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled

15

to special significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As to non-treating medical sources, the Regulations do not permit an ALJ to automatically accept or reject their opinions.  *See id.* at *2-*3.  The Regulations explain, "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. § 404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1572(f); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2-*3.

**C.    Analysis**

In the present case, the ALJ declined to apply controlling or deferential weight to Dr. Songer's opinions. *See PageID#* 79.  This appears to indicate that the ALJ followed the two-step weighing procedure.  The ALJ found that Dr. Songer's contemporaneous treatment notes constitute substantial evidence showing that Plaintiff could work.  (*Id.*). As discussed below, the ALJ's reasons for rejecting Dr. Songer's disability opinion was "unsupported by objective findings..." (*Id.*).  The ALJ's reasons for rejecting Dr. Songer's opinions, however, are not supported by substantial evidence.

First, the ALJ overlooks that Dr. Songer's records identified many symptoms indicative of depression, including anxiousness, excessive worrying, avoiding people,

procrastinating, decreased motivation, forgetfulness, and hopelessness. (*See PageID##*

335-55, 365-86, 446-502, 511-24, 542-60). When mental work abilities are at issue, such

symptoms constitute supporting medical or objective evidence. The United States Court

of Appeals for the Sixth Circuit has explained:

> In general, mental disorders cannot be ascertained and verified as are most
> physical illnesses, for the mind cannot be probed by mechanical devices ...
> in order to obtain objective clinical manifestations of mental illness....
> [W]hen mental illness is the basis of a disability claim, clinical and
> laboratory data may consist of the diagnosis and observations of
> professionals trained in the field of psychopathology. The report of a
> psychiatrist should not be rejected simply because of the relative
> imprecision of the psychiatric methodology or the absence of substantial
> documentation, unless there are other reasons to question the diagnostic
> techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817

F.2d 865, 873-74 (D.C. Cir. 1987)(other citation omitted)). In Plaintiff's case, the ALJ

erred by rejecting Dr. Songer's opinions in this manner.

This error is further seen in the absence of a medical source opinion in the record

supporting the ALJ's view of Dr. Songer's opinions. Instead of relying on Plaintiff's

treating psychiatrist opinion, the ALJ relied on the opinions of Dr. Finnerty and Dr.

Steiger (reviewers for the Ohio BDD). (*PageID#* 72). There is no indication in the ALJ's

decision, however, that she applied the factors described in the Regulations to Drs.

Finnerty and Steiger's opinions. (*Id.*). This was an error since, in the absence of an

opinion that deserves controlling weight, all medical source opinions (including the

opinions of record-reviewing physicians) must be weighed under the regulatory factors,

including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(c), (e); *see also* Social Security Ruling 96-6p. This error is further evidenced by the fact that the reviewing psychologists did not review the longitudinal record. Drs. Finnerty and Steiger's 2008 assessments predate Dr. Songer's July 2009 opinion. Drs. Finnerty and Steiger's reports thus do not address Plaintiff's mental work abilities after October 2008. This leaves Dr. Songer's opinions about Plaintiff's work abilities uncontradicted by any medical source opinion. The ALJ therefore erred by not accounting for this in her decision, but rather injecting her own lay medical opinion. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record."); *see also Meece v. Barnhart*, 2006 WL 2271336, *8 (6th Cir. 2006)("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence).

The ALJ also emphasized that Plaintiff's "limited mental health treatment and noncompliance reflects poorly on his allegations about the severity of symptoms he experienced after the alleged onset date of disability." (*PageID#* 76). Without relying on substantial supporting evidence, the ALJ attributes the gaps in treatment to either an improvement in Plaintiff's symptoms, or to his impairments having a non-restrictive impact on his work life. Yet, "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evinces a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder

itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)); *see Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation).

There remains the possibility, of course, that the ALJ's errors were harmless.  The United States Court of Appeals has explained:

> "'[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.'"

*Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545).  In *Wilson*, the United States Court of Appeals for the Sixth Circuit remanded the ALJ's decision due to its failure to comply with the good-reason rule.  378 F.3d at 550.

Although not deciding the issue, the Court in *Wilson* nonetheless discussed the possibility that a violation of the good-reason requirement may qualify as harmless error. *See id.* at 547–48.  Specifically, *Wilson* considered three possible scenarios that could lead the Court to a finding of harmless error.  *Id.* at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . ." (*Id.*).  Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." (*Id.*).  Finally, *Wilson* considered the

19

possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation." (*Id.*). Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement, the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless error justifications).

In this case, the undersigned finds that the ALJ's failure to comply with the good-reason requirement was not harmless error. First, although Dr. Songer's opinions may be inconsistent with other portions of the record, the record contains no indication that Dr. Songer's opinions "are so patently deficient that the Commissioner *could not possibly* credit it . . ." *Wilson*, 378 F.3d at 547 (emphasis added). Because of Dr. Songer's status as a treating psychiatrist, the ALJ was obligated to justify why she rejected those opinions and reached an inconsistent conclusion.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions of record are well taken and Plaintiff's request for a remand of this case should be granted[4].

## VI.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to the problems previously identified.  On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal

---

[4]Because of this conclusion and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining challenge to the ALJ's decision is unwarranted.

21

criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Michael Flint was
      under a "disability" within the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law
      Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration
      consistent with this Report and Recommendations; and

4.    The case be terminated on the docket of this Court.


June 11, 2013


                                    s/Sharon L. Ovington
                                    Sharon L. Ovington
                              Chief United States Magistrate Judge

22

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).